IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

LORNA NORRIS                                        JURY TRIAL DEMANDED

       vs.                                        CASE NO.    3: 19-cv-

GENERAL ELECTRIC EMPLOYEES FEDERAL CREDIT UNION
a/k/a GE CREDIT UNION

COMPLAINT

1. This is an action for actual, statutory, and punitive damages and attorneys fees for violation of the Equal Credit Opportunity Act (ECOA), 15 U.S.C. §1691(a); violation of the Creditor's Collection Practices Act, (CCPA), § 36a-645 et seq. and regulations issued thereunder, particularly Reg. § 36a-647-6(12), § 36a-647-5 and subsection (7), as well as § 36a-647-6(2)(A), (6) and (8), or unfair practices under CUTPA.

2. This Court has jurisdiction. 15 U.S.C. § 1691e(f), and 28 U.S.C. § 1331 and §1367.

3. Defendant is a creditor because in January 1997, defendant issued a Visa Gold Credit card to plaintiff, account ending in 1788.

4. Plaintiff is a single African-American female.

5. Plaintiff paid on her credit card account diligently for over twenty years, making great efforts to keep up to date even after she lost her job in October 2017.

6. Plaintiff became unable to pay beginning in July, 2018.

7. Plaintiff contacted defendant on September 12, 2018 to seek a modification or extension of payments based on her temporary financial hardship.

8. All actions alleged hereafter were taken by Collections Manager Elsie Vrabel and adopted, ratified, and approved by her supervisor, Tom Gerrity, VP of Lending.

FEDERAL LAW

9.  For the purpose of the ECOA, "*Applicant* means any person who requests <u>or who has received</u> an extension of credit from a creditor." 12 C.F.R. § 1002.2(e). (Emphasis added.)

10. For the purpose of the ECOA, "*Credit transaction* means <u>every aspect</u> of an applicant's dealings with a creditor regarding an application for credit or an existing extension of credit (including, but <u>not limited to</u>, information requirements; investigation procedures; standards of creditworthiness; terms of credit; furnishing of credit information; <u>revocation, alteration, or termination of credit; and collection procedures</u>)" 12 C.F.R. § 1002.2(m). (Emphasis added.)

11.  For the purpose of the ECOA, "A creditor shall not discriminate against <u>an</u> applicant on a prohibited basis regarding <u>any</u> aspect of a credit transaction." 12 C.F.R. § 1002.4(a). (Emphasis added.)

12. In 2018, defendant participated in decisions as to the extension, renewal, continuation, collection, alteration, revocation, or termination of the plaintiff's credit card account.

13. Defendant had no protocols, procedures, standards, policies, guidelines or checklists to determine whether a consumer qualified for a temporary modification or suspension of payments, or hardship relief.

14. Defendant had no protocols, procedures, standards, policies, guidelines or checklists for compliance with the ECOA.

15. Plaintiff dealt with defendant's Collections Manager, who is a Caucasian native of South Africa, a graduate of the University of South Africa.

16.  On September 12, 2018, defendant criticized plaintiff for using her credit card for luxury items, and determined that the use of her card for luxury items showed she was not eligible

for hardship relief.

17. On September 12, 2018, because of those expenditures, defendant declared that plaintiff had no hardship despite losing her job the previous October and exhausting her unemployment benefits in April 2018.

18. When plaintiff informed defendant that the "luxury items" were African American grooming expenses, while she was job hunting, defendant did not retract the hardship denial.

19. Plaintiff asked for an explanation of the "biased reasoning" and an explanation of the defendant's "racist claim." She received no response or denial.

20. On the same date, defendant claims to have accelerated the account, and thereafter made several threats, with several short deadlines, and demanded irrelevant information.

21. For instance, on October 8, 2018, defendant demanded prohibited information: copies of checks and receipts for payments made by the single plaintiff's parents on certain of plaintiff's debts, without providing notice that disclosure of such information is not required.

22. Defendant claimed it would sue if plaintiff did not bring the account up to date, and when she brought the account up to date, sued anyway.

23. Plaintiff's motion to strike the complaint in the state court collection action is attached. Defendant did not deny plaintiff's assertions therein.

24. Defendant's course of conduct in dealing with plaintiff, including its determination to refuse plaintiff a temporary modification or extension and to sue even though she was current on her payments was arbitrary, based on her status as a single African-American female.

STATE COLLECTION PRACTICES

25. Defendant's course of conduct included misrepresentations, oppressive conduct, and failure otherwise to comply with the Connecticut Creditor's Practices Act when dealing with plaintiff.

26. Defendant had no protocols, procedures, standards, policies, guidelines or checklists for compliance with the CCPA.

27. Defendant sent numerous collection emails to plaintiff, none of which included the prophylactic disclosure mandated by Conn. State Reg. § 36a-647-6(12).

28. Defendant claims to have accelerated the credit card account, but did not give notice thereof to plaintiff.

29. If defendant accelerated the credit card account, it unlawfully added late charges thereafter. *Wells Fargo Bank Minnesota N.A. v. Guarnieri*, 308 B.R. 122, 127 (D.Conn. 2004); *FDIC v. Napert-Boyer P'ship*, 40 Conn. App. 434, 443, 671 A.2d 1303, 1308-09 (1996). To represent that late fees may be imposed after acceleration is a false statement.

30. Defendant's accusation that plaintiff used her credit card account for luxury items implied that she had engaged in a shameful or disgraceful act.

31. Defendant's communications with plaintiff were confusing, misleading, created a false sense of urgency, or misrepresented the character, amount or legal status of the account.

32. On September 6, 2018, defendant demanded "payment of all delinquent amounts totaling $329 by the close of business, September 7, 2018."

33. On September 12, 2018, defendant stated that payment of $329 must be made by September 7, "failing which we will issue a summons for the full balance plus interest and legal

costs."

34. On September 12, 2018, defendant said, "I will not debate this issue with you any further. Please pay your bills or we will proceed with issuing a summons."

35. On October 8, defendant stated, "We are prepared to review your debt and suspend payments" under certain conditions.

36. On or about October 22, 2018, defendant presented plaintiff with a Payment Agreement dated as of August 17, 2018, which included requiring plaintiff to admit both that she had "failed to make any payments since February 28, 2018" and that she had made payments until "on or about July 11, 2018"; stated that the debt was $6,296.71, purported to require plaintiff to voluntarily surrender her auto if she failed to make payments, and purported to include a confession of judgment and agreement to jurisdiction in the federal court.

37. Appended to the October 22, 2018 document was a statement showing that the balance was $6,003.84

38. On November 30, 2018, defendant stated it had "already instructed our attorneys to file a lawsuit for payment as a result of your prior refusal to agree to a payment plan."

39. On December 3, 2018, defendant confirmed it would accept payments offered by plaintiff, but had "already instructed our attorneys to issue a summons and that it was with the sheriff for service. I asked the sheriff to suspended service for now and agreed that if you pay all the arrears by 12/14/2018 that we would waive the legal fees. If you do not pay all the arrears I will instruct the sheriff to proceed with serving the summons."

40. On January 4, 2019, when plaintiff was completely up to date, defendant demanded a payment agreement to be signed by January 11, 2019.

5

41. On January 4, 2019. when plaintiff was completely up to date, defendant asserted, "We regret that you are not willing to work with us and therefore you leave us no option but to issue a summons."

42. On January 29, 2019, Defendant served a collection action on plaintiff claiming that as of February 1, 2019, plaintiff owed "the principal sum of $4,714.70 plus interest of $144.77 and fees of $35.00," knowing that plaintiff was completely up to date.

43. Plaintiff's periodic statement dated 1/31/19 showed she had no past due payments and had brought her credit card account up to date.

44. Despite multiple requests, defendant refused to withdraw the suit until April 26, 2019.

WHEREFORE, Plaintiff, pursuant to Fed. R. Civ. P. 54(c), claims actual damages, including garden variety emotional distress such as for humiliation, embarrassment, anxiety and inconvenience, statutory, and punitive damages, together with attorney's fees and such other and further relief as is just or equitable.

THE PLAINTIFF

BY_____
Joanne S. Faulkner  ct04137
123 Avon Street
New Haven CT 06511-2422
(203) 772-0395
faulknerlawoffice@snet.net

| | | |
|---|---|---|
| DOCKET NO.  AAN-CV19-6032053 -S | : | SUPERIOR COURT |
| GENERAL ELEC. EMPL. F.C.U. | : | J.D. OF MILFORD |
| V. | : | AT MILFORD |
| LORNA NORRIS | : | March 14, 2019 |

## MOTION TO STRIKE

    Under Connecticut Practice Book § 10-39, I move to strike the complaint based on the failure of the complaint to state a claim upon which relief can be granted. The complaint does not allege that I am in default, because I am not in default on the credit card alleged in the complaint. I am up to date. See the latest statements attached.  It is unreasonable to persecute me by subjecting me to court costs and attorney fees, or to cause me inconvenience or distress, or to impose upon the court, when I am complying with my obligations to make the monthly payments.

    I believe the plaintiff filed this suit to discriminate against me. The collection manager chastised me for using the credit card to purchase black-oriented products and services.

THE DEFENDANT

_____
Lorna Norris
325 Platt St.
Bridgeport CT 06606

## CERTIFICATION

    I hereby certify that on Friday, March 14, 2019, a copy of the foregoing was sent via email to  James R. Winkel of Horlow, Adams & Friedman, P.C., One New Haven Ave # 100, Milford CT 06461

_____
Lorna Norris