## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| LORNA NORRIS, | : |
| | : |
| *Plaintiff*, | : CASE NO. 3:19-cv-00741-SRU |
| | : |
| v. | : |
| | : |
| GENERAL ELECTRIC EMPLOYEES | : |
| FEDERAL CREDIT UNION, | : |
| | : DECEMBER 21, 2020 |
| *Defendant.* | : |

## MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Lorna Norris unconvincingly seeks summary judgment against defendant General Electric Employees Federal Credit Union ("GEEFCU" or "Defendant") on the basis of various alleged violations of the Connecticut Creditor's Collection Practices Act (CCPA), §§ 36a-645 *et seq*.  Plaintiff's motion must be denied.  First, Plaintiff inaccurately claims that the contract between the parties did not authorize attorney's fees.  Second, Defendant was entitled to inform Plaintiff of its intent to file suit while still negotiating.  The subsequent filing of suit demonstrates that it was not a false threat.  Third, the evidence demonstrates that Defendant did not contact Plaintiff with knowledge of representation of counsel and this claim has not been preserved as it was never alleged.  Fourth, Plaintiff's claims of various "misrepresentations" misstate the material facts or fail to state a viable claim.  Finally, Plaintiff's hyper-technical claim regarding a "prophylactic warning" fails to acknowledge that the emails complied with Connecticut's requirement to disclose that they concerned collection of a debt.  Defendant further notes that Plaintiff's Memorandum is riddled with unsupported, uncited allegations to which Defendant

cannot reasonably respond.[1]  Accordingly, GEEFCU respectfully opposes Plaintiff's Motion for Summary Judgment and requests that the Court should deny Plaintiff's Motion.

I.   **STATEMENT OF FACTS AND PROCEDURAL HISTORY**

Plaintiff is a member of GEEFCU and, in or about January 1997, GEEFCU issued to Plaintiff a Visa Gold Credit Card, account ending in 1788.  (Rule 56(a)(2) Statement of Facts ("SOF"), ¶ 1, Ex. A.)  Plaintiff became unemployed in or about October 2017 and, in or about April 2018, she exhausted her unemployment benefits, notwithstanding her receipt of rental income from her 3-unit apartment house.  (SOF, ¶ 7, Ex. C at pp. 56:15–17, 56:20–25, 58:1–3.) Plaintiff became unable to pay the balance owed on the credit account and, on or about September 6, 2018, Elise Vrabel ("Ms. Vrabel"), the collections manager at GEEFCU, sent Plaintiff an email demanding payment of the total delinquency.  (SOF,¶ 8.)  On September 12, 2018, Plaintiff responded to the email, stating that she lost her job and was unable to make the monthly payments on the credit account.  (SOF,¶ 9.)  That same day, Ms. Vrabel responded, noting her understanding of Plaintiff's situation, and asking Plaintiff to call to discuss payment.  (SOF, ¶ 37, Ex. B.)

Also on September 12, 2018, Ms. Vrabel sent Plaintiff an email seeking more detail about her situation, including when she lost her job and for how long she collected unemployment benefits.  (SOF, ¶¶ 38–39, Ex. B.)  Plaintiff asked Ms. Vrabel about the purpose of requesting the information, to which Ms. Vrabel responded that she needed the information "to evaluate [Plaintiff's] situation in order to determine how [Ms. Vrabel] deal[s] with [Plaintiff's] debt." (SOF, ¶ 40, Ex. B.)  Later on September 12, 2018, Ms. Vrabel emailed Plaintiff, stating: "Since losing your job in October, I notice on the history of your account, that you constantly and excessively used funds from your account for luxuries like restaurants, Netflix, Amazon, beauty

---

[1] Plaintiff's Rule 56(a)(1) Local Rule statement is also improperly challenges confidentiality designations.  *See* Ecf. Doc. No. 58-2 at ¶¶ 32-34.  *See* Defendant's Local Rule 56(a)(2) Local Rule Statement at ¶¶ 32-34 (Dec. 21, 2020).

salons and so forth."[2]  (SOF, ¶ 42, Ex. B.)  She concluded that there was no hardship and reiterated the demand for payment of the delinquency.  (SOF, ¶¶ 41–42, Ex. B.)

On October 8, 2018, Ms. Vrabel emailed Plaintiff, stating that GEEFCU was "prepared to review [Plaintiff's] debt and suspend payments" if Plaintiff (1) attended a meeting at GEEFCU, and (2) provided documents related to her unemployment benefits, debts for the previous three (3) months, payments for Plaintiff's debts made by Plaintiff's parents, modification and payment of Plaintiff's mortgage, and Plaintiff's 2016 and 2017 tax returns.  (SOF, ¶ 43, Ex. B.)  Plaintiff eventually met with Ms. Vrabel very briefly at GEEFCU on October 22, 2018, during which Ms. Vrabel provided Plaintiff with an incomplete draft of the payment agreement and asked Plaintiff about an address listed on her mortgage modification form.  (SOF, ¶¶ 44–46, Ex. B; Ex. D at pp. 59:22–60:2, 68:7–70:19.)

On October 25, 2018, Ms. Vrabel followed up with Plaintiff regarding signing the payment agreement, and informed Plaintiff that "we must either have a signed payment agreement or continue with formal collection procedures."  (SOF, ¶ 48, Ex. B.)  Plaintiff responded by declining to sign the payment agreement, and stated that she was going to obtain legal advice on her belief that GEEFCU was not negotiating in good faith.  (SOF, ¶ 49, Ex. B.)

In late November and early December 2018, Plaintiff emailed Ms. Vrabel to inform her that she had found employment and wanted to bring her credit account up to date.  (SOF, ¶ 50, Ex. B.)  On December 2, 2018, Ms. Vrabel emailed Plaintiff to confirm Plaintiff's proposed payment plan for bringing her credit account up to date, and informed Plaintiff that even though she had

---

[2] A copy of Plaintiff's credit account history for the months preceding her request for hardship relief is attached to the SOF as Exhibit F.  The credit account history shows, *inter alia*, recurring monthly charges for Netflix and multiple charges for eating out at restaurants during which time Plaintiff allegedly suffered a financial hardship.  (SOF, ¶ 42, Ex. F)

previously asked the sheriff to serve Plaintiff with a summons for a collections action, she told the sheriff to suspend service of the summons pending Plaintiff's payment of the delinquency. (SOF, ¶ 51, Ex. B.)  Ms. Vrabel added that, if Plaintiff failed to pay the full arrearage, then she would instruct the sheriff to proceed with service; she also noted that she never agreed to waive any late fees that had accrued on Plaintiff's credit account. (SOF, ¶ 51 Ex. B.)  The Loanliner agreement provides: "You promise to pay all costs, including but not limited to any attorney fees, we incur in protecting our security interest and rights in the property, to the extent permitted by applicable law." (SOF, ¶ 16.)  Plaintiff responded by telling Ms. Vrabel that she was not being truthful and calling her "stubborn and irrational."  (SOF, ¶ 52, Ex. B.)  She also stated that "[e]ither you allow me to get caught up or we fight it out in court."  (SOF, ¶ 52, Ex. B.)  Ms. Vrabel then informed Plaintiff that because Plaintiff was not adhering to promises she made verbally, that GEEFCU was proceeding with serving the summons for the collections action.  (SOF, ¶ 53, Ex.B.)

On January 3, 2019, Ms. Vrabel contacted Plaintiff attempting to arrange a meeting for the Plaintiff to sign a payment agreement for $400 per month related to the credit account.  (SOF, ¶ 54, Ex. B.)  Plaintiff refused to sign the payment agreement, leaving GEEFCU no choice but to serve Plaintiff with a collections action.  (SOF, ¶ 55, Ex. B.)  GEEFCU filed the collections action against Plaintiff in the Connecticut Superior Court.[3]   (SOF, ¶ 56.)   Defendant sent Plaintiff a follow-up letter on June 13, 2019 (SOF, ¶ 59, Ex. E at ¶¶ 3–4.)   Defendant did not internally process this litigation until it was served with the summons and complaint on June 26, 2019.  (SOF, ¶¶ 58–59, Ex. E at ¶¶ 3–4.)  GEEFCU has not communicated with Plaintiff directly in any manner during the pendency of this litigation and/or while knowing that Plaintiff is represented by counsel. (SOF, ¶ 60, Ex. E at ¶ 6.)

---

[3] *See Gen'l Elec. Employees Fed. Credit Union v. Norris*, No. AAN-CV19-6032053-S (Conn. Super. Ct.).

II.  **LEGAL STANDARD**

  A.  **Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  When ruling on a motion for summary judgment, the court must construe the evidence in the light most favorable to the nonmoving party and draw all inferences in its favor. *Dalberth v. Xerox Corp.*, 766 F.3d 172, 182 (2d Cir. 2014).  The movant bears the initial burden of showing the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant satisfies its initial burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).  A fact is "material" if it might affect the outcome of the case under substantive law, and a dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the non-movant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

  B.  **CCPA**

The CCCPA provides: "No creditor shall use any abusive, harassing, fraudulent, deceptive or misleading representation, device or practice to collect or attempt to collect any debt."  CONN. GEN. STAT. § 36a-646.  Section 648 of the CCCPA provides a private right of action for violations of the act and lists the available remedies for violations of the act and the regulations issued thereunder.  *See* CONN. GEN. STAT. § 648.  Conn. State Regs. § 36a-647-6 provides: "(2) The false representation of: (A) The character, amount or legal status of any debt" violates the CCCPA. Section 36a-647-6(6) states that "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken" violates the CCCPA, and subsection (8) provides that "[t]he false

representation or implication that the consumer debtor committed any crime or engaged in any shameful or disgraceful act" violates the act.  Section 36a-647-6(12) of the regulations states that "[t]he failure to disclose clearly in all communications made to collect a debt or to obtain information about a consumer debtor or consumer debtor agent that the creditor is attempting to collect a debt" violates the CCCPA.  Conn. State Regs. § 36a-647-5 provides:

> A creditor shall not engage in any conduct the natural consequence of which to a reasonable person would be to harass or abuse such person in connection with the collection of a debt. A creditor shall not intentionally engage in any conduct which the creditor knows would harass or abuse any person. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

> (7) Soliciting any amount, including any interest, fee, charge or expense incidental to the principal obligation, unless such amount is authorized by the agreement creating the debt or permitted by law.

## III.   ARGUMENT

Plaintiff's motion for summary judgment on the various CCPA claims must be denied as there are either disputed facts or the claims are not authorized by law.  Plaintiff organizes her claims as follows: (1) falsely claiming attorney's fees; (2) falsely threatening suit; (3) "misrepresentations [that] violat[ing] collection laws;" and (4) failure to include a prophylactic warning.

### A.  The Agreement Authorized the Recovery of Attorney's Fees

Despite Plaintiff's repeated declarations to the contrary, the agreement between Plaintiff and Defendant authorizes the recovery of attorney's fees. *See* Pl. Memo at pp. 2–3.  Because Plaintiff's argument is entirely premised on the claim that they are not authorized in the agreement, this argument is easily dispatched.

The Security Agreement attached as Exhibit 2 by Plaintiff specifically authorizes Defendant to recover attorney's fees in pursuit of its rights.  Ex. 2 to Pl's Mot for Summary

Judgment.  Specifically, it states: "[y]ou promise to pay all costs, including but not limited to any attorney fees, we incur in protecting our security interest and rights in the property, to the extent permitted by applicable law." *Id.* The only security at issue in the Security Agreement was the credit card in question.

The pursuit of attorney's fees where authorized by the governing document is permitted. *See, e.g.*, *Mayhall v. Berman & Rabin, P.A.*, No. 4:13CV0175 AGF, 2014 WL 340215, at *6 (E.D.Mo. Jan. 30, 2014) ("[B]ecause the recovery of reasonable attorney's fees is expressly permitted by the credit card agreement and, as discussed below, a fixed percentage fee is not unreasonable as a matter of law, Defendant's request for approval of such a fee award did not violate the FDCPA's proscription on the collection of amounts not expressly authorized by the agreement or permitted by law." ); *Cisneros v. Neuheisel Law Firm, P.C.*, No. CV06–1467 (DGC), 2008 WL 65608, at *2 (D.Ariz. Jan. 3, 2008) (finding that a defendant's request for attorneys' fees based on a contingency fee did not violate the FDCPA because "the underlying agreement provides for the recovery of 'reasonable' attorneys' fees; it is not limited to 'actual' attorneys' fees); *Kirscher v. Messerli & Kramer, P.A.*, No. CIV. 05–1901 (PAM) (RLE), 2006 WL 145162, at *5 (D.Minn. Jan. 18, 2006) (finding that a demand for attorneys' fees did not violate the FDCPA because "[t]he contract between Kirscher and Discover Bank expressly provided that Discover Bank could charge Kirscher for reasonable attorneys' fees and litigation costs incurred in collecting the debt.")

Plaintiff next claims that Defendant improperly sought attorney's fees that had not accrued, but fails to point to any piece of evidence of specific attorney's fees demanded.  *See* Pl. Memo. at pp. 3–5.  Defendant's letters warning Plaintiff that attorney's fees could accrue were accurate and authorized by the Agreement.  Plaintiff's entire argument in this section is premised

on the assumption that such fees were not authorized.  Plaintiff is wrong.  At a minimum, there

exists a genuine dispute of material fact as to whether the attorney's fees were authorized and

Plaintiff's motion should be denied on this ground.

### B.  Defendant Never Falsely Threatened Suit

Plaintiff's Motion claims that Defendant violated 15 U.S.C. §1692e(5)'s prohibition on

debt collector's threatening to take actions "that cannot legally be taken or that is not intended to

be taken."[4] *See* Pl. Memo. at pp. 5–10.  Here, Defendant negotiated over the course of several

months with Plaintiff, honestly advising of its intent to bring suit if Plaintiff did not agree to pay

her debt and then actually bringing such suit.  The actual bringing of a suit demonstrates, at a

minimum, that there is a triable issue of fact as to Defendant's intent to bring suit in the course of

its negotiations with Plaintiff.

As an initial matter, Defendant notes that the only reference to statutory violation in this

section of Plaintiff's argument cites to the FDCPA. Notably, "the [FDCPA] does not apply to

creditors collecting their own debts." *Backuswalcott v. Common Ground Cmty. HDFC, Inc.*, 104

F.Supp.2d 363, 366 (S.D.N.Y.2000); *Williams v. Citibank, N.A.*, 565 F.Supp.2d 523, 530

(S.D.N.Y.2008) (citing 15 U.S.C. § 1692a(6)(B)); *Doherty v. Citibank* (S.D.) N.A., 375

F.Supp.2d 158, 162 (E.D.N.Y.2005) ("[T]he FDCPA expressly limits its application to debt

collectors, not creditors.").

In order to prevail in such a claim pursuant to the FDCPA, Plaintiff must prove that

Defendant never intended to follow through on its promises to bring suit.  *See Baptist v. Glob.*

*Holding & Inv. Co.*, No. CIVA04CV2365(DGT), 2007 WL 1989450, at *5 (E.D.N.Y. July 9,

2007) ("To successfully prove a threat was in violation of § 1692e(5) based on lack of intent to

---

[4] This section is the only authority cited by Plaintiff in § II of her memorandum.

follow through, the plaintiff carries the burden of showing that the possibility of a lawsuit could be ruled out.").

Plaintiff refers to threats of suit on September 12, claiming that "[i]n September e-mails emails [sic] and one form letter, defendant threatened to issue a summons promptly upon nonpayment [but] did not." Pl. Memo. at p. 6. This was part of an ongoing discussion, apparently referencing requests from Defendant's Collection's Manager Elsie Vrabel:

On September 12, 2018 at 12:57 p.m. Mrs. Vrabel noted that there was not a hardship and requesting payment of the owed debt "failing which we will issue a summons." In response to insults from Plaintiff, Mrs. Vrabel at 4:19 p.m. reiterated that the position of the Defendant was that Plaintiff pay her debts or that the Defendant would initiate litigation. The next day, on September 13, 2018, Plaintiff contacted Tom Gerrity, the Defendant's Vice President of Lending complaining about her interaction with Mrs. Vrabel and requesting that the Defendant work with her further, which Mr. Gerrity agreed to do. *See* Sep. 13, 2018 email from Tom Gerrity to Plaintiff. As a result, negotiations between Plaintiff and Defendant continued and litigation was postponed. Plaintiff cannot possibly prove that there is no genuine issue of material fact that Defendant did not honestly intend to pursue litigation at the time such demands were made, particularly in light of Defendant's claim made mere months later.

Next, Plaintiff claims to on October 22, 2018, Defendant "proclaimed [that] we are instituting legal action." This statement is not matched to a citation in either the memorandum or the statement of facts. Notably, however, Mrs. Vrabel emailed Plaintiff on October 25, 2018 following up on an October 22, 2018 meeting and noting that if they were unable to reach an agreement the Defendant would be forced to "continue with formal collection procedures." Plaintiff and Mrs. Vrabel continued to work to negotiate a resolution until Defendant instructed

counsel to issue a summons on January 4, 2019.

Plaintiff has failed to demonstrate that Defendant threatened any action it did not intend to conduct. The mere fact that ongoing negotiations were given a chance to reach fruition prior to bringing a lawsuit does not suggest that Defendant did not honestly intend to bring suit. Moreover, the filing of the lawsuit shortly thereafter demonstrates definitively that Defendant was honest in suggesting that failure to resolve the dispute would result in litigation. At a minimum, there is a serious dispute as to whether Defendant intended to bring a lawsuit when referenced, and the Court should respect the parties' interests in allowing ongoing negotiations as an alternative to the immediate filing of suit.

**C. <u>No Knowing Threat of Suit While Represented</u>**

There are numerous problems with Plaintiff's claim that Defendant contacted her while represented regarding a threat of suit in June 2019. *See* Pl. Memo. at pp. 9–10. First, Plaintiff has failed to attach or otherwise cite the alleged letter. Second, Plaintiff not made this claim in her Amended Complaint Plaintiff. Third, to the extent there was a June 2019 letter received by Plaintiff, the claim was not served until June 26, 2019.

Section 36a–647–3 of the Regulations of Connecticut State Agencies provides in relevant part: "Any creditor ... shall not ... [c]ommunicate with any person other than the attorney for the consumer debtor or consumer debtor agent <u>after the creditor knows the consumer debtor or consumer debtor agent is represented by an attorney</u> with regard to the subject debt and has knowledge of such attorney's name and address . . ." (Emphasis added.) Defendant denies having knowledge of Plaintiff's representation at the time the alleged letter was sent. *See* Decl. of E. Vrabel at ¶ 3–4. Substantively, Plaintiff has not met her burden of proving that Defendant knew Plaintiff was represented at the time the letter was sent.

Moreover, the claim itself is not properly before the Court.  "Summary judgment is not appropriate on a claim not alleged in the complaint." *Iroquois Master Fund, Ltd. v. CEL-SCI Corp.*, No. 09 CV 8912 HB THK, 2011 WL 1216688, at *5 (S.D.N.Y. Mar. 28, 2011) (*citing*, *Coram Healthcare Corp. v. Cigna*, No. 00 Civ. 2677(RMB), 2002 WL 32910044, at *11 (S.D.N.Y. July 24, 2002); *Mauro v. Southern New England Telecomm., Inc*., 208 F.3d 384, 386 n. 1 (2d Cir.2000) ("Because [plaintiff] did not include a claim in his complaint, the district court refused to consider it. We will not disturb this decision on appeal."). Even tangential claims must be specifically alleged. *Id.* ("While the Amended Complaint alleges a breach of contract, it does not allege the breach of contract that is the subject of OOC's summary judgment motion."). Plaintiff has not pleaded the claim and it is therefore not properly subject to an affirmative motion for summary judgment.

Because Plaintiff has not properly supported this claim with admissible evidence, because it is not part of the complaint, and because the claim itself is disputed, the Motion must be denied.

### D. Plaintiff Inappropriately Relies Upon an Unfinished Draft of the Payment Agreement

In § III (A) of Plaintiff's Memorandum, Plaintiff claims various deficiencies with the Payment Agreement.  *See* Pl. Memo. at pp. 11–13.  Defendant has repeatedly explained that the Payment Agreement discussed on October 22, 2018 was not a final document, but a working draft, which was never signed.  Ms. Vrabel explained that the document was not finished and was in the process of being filled it during the meeting with Plaintiff.  Plaintiff nonetheless relies upon this "draft" to support claims that the information within it was incorrect or improper, although it is not clear from the memorandum what the exact basis is for summary judgment.

Ms. Vrabel testified at her August 19, 2020 deposition that "it's a template which is

edited to – for each situation." Vrabel Dep., 68:15–16.  She further testified that she and Plaintiff

met and "started entering her information" but that there were dates to change, terms to remove,

and that Plaintiff requested it despite it being an "unedited, unfinished document." *Id*. at 69:6-20.

Plaintiff cannot seriously claim that an unfinished and unsigned document with numerous

pending changes, an unfinished draft of which was specifically requested by Plaintiff, was

somehow misrepresentative.  At a minimum, it represents a genuine dispute of material fact.

### E.  **Defendant Accelerated Plaintiff's Account**

Plaintiff appears to incorrectly claim that Defendant did not inform Plaintiff of

acceleration of her account.  *See* P. Memo. at pp. 13–14.  Plaintiff further references the

improper addition of late fees without a single citation in her Memorandum or Statement of Facts

regarding late fees.  Because the Defendant did not misrepresent the acceleration of the account

and because Plaintiff has completely failed to support any claim regarding late fees, this aspect

of the Plaintiff's Motion must be denied.

Defendant mailed Plaintiff an acceleration notice dated September 12, 2018, which

Plaintiff thereafter attached to her Amended Complaint. ECF No. 9.  Notably, this attachment

predated production of the acceleration notice in the pending action.  To the extent that Plaintiff

claims Defendant misrepresented the acceleration of the debt, this is clearly disputed.

Plaintiff further claims that Defendant improperly sought to include late fees following

acceleration.  This claim has not been preserved as there is no factual basis for it in Plaintiff's

Memorandum or her Statement of Facts.  Even if unopposed, Plaintiff would not have met her

burden in light of the lack of supporting evidence. *Vermont Teddy Bear Co. v. 1-800 Beargram

Co.*, 373 F.3d 241, 244 (2d Cir. 2004) ("If the evidence submitted in support of the summary

judgment motion does not meet the movant's burden of production, then 'summary judgment

must be denied even if no opposing evidentiary matter is presented.'").

Moreover, Plaintiff's claim that late fees can never be added post-acceleration appears inaccurate.  Plaintiff cites *Wells Fargo Bank Minnesota N.A. v. Guarnieri*,  308 B.R. 122, 127 (D. Conn. 2004), but that decision explicitly avoided such a holding, instead resting on an interpretation of the Bankruptcy Code.  *Id.* ("[T]his Court need not decide that issue . . . since at the time she filed for Chapter 13 bankruptcy, a 'judgment enforcing the Security Instrument' had already entered.").  Instead it appears that the instrument determines whether post-acceleration late fees may be added.  *See, e.g., Home Loan Inv. Bank, F.S.B. v. Goodness & Mercy, Inc.*, No. 10-CV-4677 ADS ETB, 2012 WL 1078886, at *7 (E.D.N.Y. Mar. 30, 2012) ("To determine whether a note provides for late fees after a mortgage note has been accelerated, courts look to the stated purpose of the late fee provision in the note.").

Plaintiff further claims without evidentiary support that the amount claimed changed following acceleration.  *See* Pl. Memo. at pp. 14–15. Plaintiff apparently fails to recognize that Plaintiff continued to make payments after acceleration.  The credit agreement that Plaintiff signed with GEEFCU provides: "If immediate payment is demanded, you will continue to pay interest until what you owe has been repaid at the applicable interest rates in effect or, if applicable, at the default rate disclosed in the addendum."  (SOF, ¶ 1, Ex. A at p. 10 (Visa Credit Card Agreement.))  It continues: "We [GEEFCU] can also exercise any other rights given by law when you are in default, and any rights we have under any Security Agreements you have with us [GEEFCU]."  (*Id.*)  Notably, the "Security Agreement" section of the Credit Card Agreement provides that attorney's fees may be included in the costs associated with default.  (*See id.* at 5.) As such, changes to the balance should be expected.

**F.   Defendant Appropriately Disclosed its Intent to Collect a Debt**

Plaintiff claims that Defendant's communications violated Conn. Agencies Regs. 36a-647-6(12) in that it failed to disclose that the communications were an attempt to collect a debt. Plaintiff seems to suggest that the communications must specifically use talismanic language that "this is an attempt to collect a debt."  This, however, is not required, but rather just the disclosure of the attempt to collect a debt.

As an initial matter, it is worth noting that Connecticut's requirements for creditors are not as strict as the FDCPA disclosure requirements for debt collectors and that therefore reference to the FDCPA decisions in this context are of assistance but not directly on point.  Specifically, the FDPCA requires disclosure that the communication is an attempt to collect a debt "and that any information obtained will be used for that purpose." 15 U.S.C.A. § 1692e(11).  Conn. Regs. 36a-647-6(12), however, only requires disclosure of the attempt to collect a debt.  Although a validation notice must communicate the preceding information, there "is no requirement that the letter quote verbatim the language of the statute." *Emanuel v. Am. Credit Exch.*, 870 F.2d 805, 808 (2d Cir. 1989).  Connecticut's requirement is therefore merely to clearly disclose that it is attempting to collect a debt.

Plaintiff claims that "none of the numerous e-mails" complied with this requirement, which is clearly untrue.  *See* Pl. Memo. at p. 15.  The initial September 6, 2018 email from Elsie Vrabel to Plaintiff clearly advised that Defendant was "demand[ing] payment" of "delinquent accounts." (Ex. B at GEEFCU NORRIS 000102.)  On September 12, 2018, Elsie specified that "we have to discuss payment of your debt," that she sought to "evaluate [her] situation in order to determine how I deal with your debt," that the Defendant "demand[s] payment of the full balance of your debt," requested that Plaintiff "please pay your debt as demanded," that "we have to demand

14

payment of your debt," etc.  (*Id.* at GEEFCU NORRIS 000093–100.) Regardless of the form, every explicit request for payment of the debt clearly communicates the information required under the regulation: disclosure of the attempt to collect the debt. *See Forman v. Acad. Collection Serv., Inc.*, 388 F. Supp. 2d 199, 205 (S.D.N.Y. 2005) ("While Chafetz's letter does not track the language of the statute verbatim, it is not required to as long as the warning comes across.") No reasonable consumer could possibly have failed to understand that the Defendant was attempting to collect a debt based on the disclosures in the above emails.

## G.  Summary Judgment is Inappropriate

Plaintiff's Motion rests upon either inaccuracies or claims of *de minimis* violations.  Such claims are subject to defense under Connecticut's regulatory framework immunizing certain bona fide errors.

Pursuant to C.G.S. § 36a-648(c):

> A creditor may not be held liable in an action brought under this section if the creditor shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error, notwithstanding the maintenance of procedures reasonably adopted by the creditor to avoid any such error.

This same exemption is recognized in Conn. Agencies Regs.  36a-647-7. Plaintiff's regulatory violations are exactly the types considered by these sections, which would require an evidentiary analysis of the Defendant's procedures and whether there was "intent" behind the alleged errors. As such, summary judgment would prevent analysis under these sections.

"In addition, '[f]or a plaintiff to have a viable claim under the CCPA, she must present some evidence of harm because of the defendant's actions.'"  *Kloth-Zanard v. Bank of America*, No. 3:15-CV-1208 (MPS), 2019 WL 1922070, at *10 (D. Conn. Apr. 30, 2019) (quoting *Dina v. Cuda & Assocs.*, 950 F. Supp. 2d 396, 406 (D. Conn. 2013)).

Here, Plaintiff has not presented any evidence that she suffered harm from GEEFCU's

actions. First and foremost, Plaintiff has not put forth any evidence that GEEFCU engaged in any harassing or abusive conduct. The emails exchanged between Plaintiff, Ms. Vrabel, and Mr. Gerrity reveal that GEEFCU attempted to work with Plaintiff regarding her delinquency, as GEEFCU multiple times requested documents and information from Plaintiff related to her alleged hardship and sought to schedule a meeting. Plaintiff has also failed to put forth any evidence that she suffered harm because of GEEFCU's actions. Finally, even if Plaintiff could demonstrate a violation under her Amended Complaint, such violation was not intentional especially where GEEFCU attempted to work with Plaintiff regarding a payment plan. (*See generally* Ex. B (emails between Plaintiff, Ms. Vrabel, and Mr. Gerrity regarding Plaintiff's delinquency, and showing GEEFCU's efforts to assist Plaintiff with a payment plan).) Without any evidence of harm, Plaintiff's motion must be denied.

## IV.   **CONCLUSION**

Plaintiff's summary judgment is defective substantively and procedurally. As an initial matter, it fails to identify the specific evidence on which Plaintiff relies so that Defendant may clearly respond and seeks to include causes not present in the Amended Complaint. More substantively, each of Plaintiff's various claims suffers fatal flaws. For example, Plaintiff misrepresents the contents of the agreement between the parties as well as the Payment Agreement draft later discussed. As to "false" claims of suit, the bringing of a lawsuit demonstrates that Defendant had no intent to misrepresent its seriousness with regard to Plaintiff's debt. Defendant further clearly identified that its communications sought to recover a debt, despite not utilizing any unnecessary talismanic phrase. Plaintiff further fails to identify any falsity or misrepresentation regarding the balance of Plaintiff's debt. For these reasons and those included herein, Plaintiff has failed to demonstrate the lack of any genuine dispute of a material fact. Accordingly, the Court

should deny Plaintiff's Motion for Summary Judgment.


Respectfully Submitted,

THE DEFENDANT,
GENERAL ELECTRIC EMPLOYEES FEDERAL
CREDIT UNION


By  _/s/ Thomas C. Blatchley_____
    Thomas C. Blatchley
    Andrew D. Bullard
    Gordon & Rees Scully Mansukhani, LLP
    95 Glastonbury Boulevard, Suite 206
    Glastonbury, CT 06033
    Phone: 860-494-7525
    Fax: 860-560-0185
    Email: tblatchley@grsm.com
    Email: abullard@grsm.com

## **CERTIFICATION**

I hereby certify that on this 21st day of December, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filings.  Parties may access this filing through the Court's CM/ECF System.


_____ */s/ Thomas C. Blatchley* _____
Thomas C. Blatchley